UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 11-87-01 (MJD/JJK) |
| Plaintiff, | |
| v. | **ORDER & REPORT AND RECOMMENDATION** |
| **Julian Okeayainneh**, | |
| Defendant. | |

Ann M. Anaya, Assistant United States Attorney, for Plaintiff.
Jean M. Brandl for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on September 14, 2011 on Defendant's Motion for Grand Jury Transcripts and Motion For Reconsideration And Dismissal Based on Prosecutorial Misconduct. (ECF Nos. 445, 447.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, Defendant's motions are **DENIED**.[1]

## I.  BACKGROUND

**A.   Procedural history**

On December 17, 2010, Defendant Julian Okeayainneh ("Defendant") was arrested in the Central District of California. (ECF No. 1, Aff. of Randall Flint 7.) On December 20, 2010, the Government filed a complaint alleging that Defendant "did knowingly and intentionally commit

---

[1] To the extent Defendant's Motion For Reconsideration And Dismissal Based on Prosecutorial Misconduct seeks to dismiss the indictment, this Court recommends that Defendant's motion should be **DENIED**.

1

conspiracy, bank fraud, and aggravated identity theft." (ECF No. 1.) On February 22, 2011, this Court held a preliminary examination and detention hearing on the complaint. (ECF No. 15.) After that hearing, the Court issued an order for Defendant's detention pending trial pursuant to 18 U.S.C. § 3142(e). (ECF No. 16.)

On March 8, 2011, the grand jury returned a fifty-nine-count superseding indictment charging Defendant with, among other things, conspiracy to commit bank fraud, identity theft, and aggravated identity theft. (ECF No. 34.)

Defendant now moves this Court to reconsider the findings of the preliminary examination and detention hearing, to dismiss the indictment, and to produce transcripts of the grand jury proceedings. (ECF Nos. 445, 447.)

**B.     The Criminal Investigation**

The Government called two witnesses at the preliminary examination and detention hearing: Special Agents Randall Flint and Jim Schoup. (ECF No. 447, Mot. For Recons. & Dismissal, Ex. 2, Tr. of Prelim. Examination & Det. Hr'g ["Tr."] 4, 20.) According to Special Agent Flint, a cooperating defendant used a stolen identity–with the name "J.B."–to open up multiple bank accounts at Associated Bank, deposited a stolen check in the amount of $107,018.71 into one of those accounts, and then proceeded to withdraw $57,000 from that account. (Id. at 6-7.) Upon her arrest, the cooperating defendant told law enforcement that she procured her stolen identification documents from an individual in California who referred to himself as "JJ." (Id. at 4, 24.) On several occasions, "JJ" took the cooperating defendant to a storage unit in California where he "enter[ed] and return[ed] with identities and financial documents for her to use" in opening the bank accounts. (Id. at 8.)

Law enforcement subsequently located the storage unit in California. (Id.) A Texas driver's

license with Defendant's photograph was used to rent the storage locker. (Id.) An investigation revealed that the information listed on the Texas driver's license belonged to another individual who did not give Defendant permission to use his identity. (Id. at 10.) When law enforcement showed the cooperating defendant a photo of Defendant Okeayainneh, she positively identified him as the man she met with in California. (Id. at 8.) The cooperating defendant also had Defendant Okeayainneh's phone number saved in her cell phone. (Id. at 9.)

A search warrant was executed on the storage unit on December 17, 2010. (Id.) As law enforcement entered the storage facility, Defendant appeared on the scene. (Id.) Defendant denied that he had rented the storage unit and told law enforcement he had shown up at the facility to meet a friend. (Id.) When Defendant was shown a photograph of the Texas driver's license used to rent the unit, he said–according to Special Agent Flint–that "he didn't understand why a friend of his would use his photo to rent the storage unit." (Id.) A key to the storage unit was found in Defendant's custody after he consented to a search of his wallet and vehicle. (Id. at 10-11.)

In the storage unit, law enforcement found thousands of stolen identities along with financial documents, immigration documents, immigration employment verification forms, check stock, and credit reports. (Id. at 11.) There were twenty-eight stolen identities with Defendant's picture on them inside the locker. (Id.) Multiple identifications with the cooperating defendant's photograph, a passport photo of the cooperating defendant, and a note with the name "J.B." that referenced Associated Bank–the bank into which the stolen check was deposited–were also found inside the locker. (Id. at 21.)

## II.   ANALYSIS

**A.   Defendant's Motion For Reconsideration Of The Findings Of The Preliminary Examination And Detention Hearing Is Denied.**

Defendant contends that the Government knowingly presented false testimony at the preliminary examination and detention hearing. Therefore, Defendant asks this Court to reverse its findings of probable cause. At the hearing, Special Agent Flint testified as follows:

> Q. And in searching the specific stolen identities inside of the locker, did you find any identities that matched the identity used by the cooperating defendant?
> A. Yes, we found the driver's license that was used by J.B.
> Q. By the cooperating defendant?
> A. Yes.
> Q. With the identity J.B.?
> A. Yes, that is correct.
> Q. And that is the one that was used in the fraudulent bank account description we talked about, is that right?
> A. Yes.

(Tr. at 11-12.)

During the cross-examination of Special Agent Flint, the Court sought to clarify precisely what was found in the storage locker:

> THE COURT: So there were several pieces of identification in the name of J.B., with the cooperating defendant's photograph on it; is that correct?
> THE WITNESS: Yeah.
> THE COURT: And you think, but you are not sure, that one of those may be the actual ID that was used to open the account in Wisconsin?
> THE WITNESS: Correct.

(Tr. at 19.)

After the hearing, counsel for Defendant reviewed the evidence recovered from the storage locker and did not find any identification with the name "J.B." on it. (ECF. No. 445, Mot. For Recons. & Dismissal, Aff. of Robert McDowell 2.)

"To prove prosecutorial use of false testimony, a defendant must show that: (1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005). Perjury is an

intentional, voluntary, knowing false statement. United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985). The Court finds that Defendant has not met his burden with regard to the first element. At best, the evidence shows that Special Agent Flint was mistaken as to whether the "J.B." identification was found in the storage unit. Special Agent Flint later equivocated in his testimony and indicated he was not sure if the identification was there. Accordingly, the Court finds that the Government did not knowingly present false evidence at the preliminary examination and detention hearing.

Next, Defendant contends that Special Agent Flint's mistaken testimony "created the link necessary for the judge to make a detention and probable cause finding" and therefore the Court should reconsider and reverse its findings at the preliminary examination and detention hearing. (ECF No. 446, Memo. in Supp. of Mot. For Recons. & Dismissal 6. ) The Court, however, did not rely upon the existence *vel non* of an identification bearing the name "J.B." in the storage locker in making its probable cause finding. (Tr. 29-30.) More specifically, the Court found that "[b]ased on the testimony of the two special agents, it appears that [Defendant] had at least one storage locker with thousands of pieces of false identification, and that . . . in that . . . storage locker were found at least something over 20 pieces of identification with [Defendant's] photograph on them." (Id.) These facts formed the basis for the Court's determination that probable cause existed to believe Defendant committed the crimes alleged in the complaint.

Furthermore, additional evidence exists to tie Defendant to the crimes alleged in the complaint. Defendant was in custody or control of thousands of piece of false identification, some of which bore his photograph, by virtue of the fact that a key to the storage unit was found in his possession. (Tr. 21.) The cooperating defendant told law enforcement that she opened up the bank account with a stolen identity provided to her by Defendant at the storage unit. (Tr. 6-8, 24.) The

cooperating defendant identified Defendant, in a photograph, as the man who gave her the stolen identity she used to open up the bank account. (Tr. 8.) Defendant's phone number was saved in the cooperating defendant's cell phone. (Tr. 9.) Some of the identification found in the storage locker contained pictures of the cooperating defendant. (Tr. 21.) Finally, a passport photo of the cooperating defendant was also found in the storage unit.[2] (Id.) Consequently, the Court is satisfied that probable cause exists to believe Defendant committed the crimes alleged in the complaint. Defendant's motion to reconsider the findings of the preliminary examination is denied.

In addition, the Court found that Defendant "is a serious risk of flight. The defendant has a prior conviction for engaging in an offense which involved identity deception and has given false information to law enforcement. The defendant has a prior bench warrant and is not a citizen of the United States." (ECF No. 16, Order of Detention 8.) Defendant has not disputed these facts. Therefore, Defendant's motion to reconsider the findings of the detention hearing is denied.

**B.     Defendant's Motion To Dismiss The Indictment Should Be Denied.**

Defendant next contends that the complaint and the indictment should be dismissed under Fed. R. Crim. P. 12(b)(3)(B) because the Government relied on false testimony in seeking charges against Defendant. Under Costello and its progeny, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." United States v. Calandra, 474 U.S. 338, 345 (1974) (citing Costello v. United States, 350 U.S. 359 (1953)). Even if perjured testimony is presented to a grand jury, an indictment should

---

[2] In addition, Special Agent Schoup testified that a note with the name "J.B." that referenced Associated Bank was found in the storage locker. (Tr. 21.)See ECF. No. 445, Mot. For Recons. & Dismissal, Aff. of Robert McDowell 2 ("The only items which had the name 'J.B.' on them were two handwritten notes regarding T-mobile, a torn up note and two checks.").

be not be dismissed so long as there is "some competent evidence to sustain the charge issued." United States v. Johnson, 767 F.2d 1259, 1275 (8th Cir. 1985). The Government has stated that Special Agent Flint did not testify before the grand jury. (ECF No. 450) Even if Special Agent Flint had given identical testimony before the grand jury, Defendant would not be entitled to have the indictment against him dismissed because the Court is satisfied that some evidence exists to sustain the charges in the indictment, as discussed above. Consequently, Defendant's motion to dismiss the indictment should be denied.

**C.     Defendant's Motion To Produce Transcripts Of The Grand Jury Proceedings Is Denied.**

Defendant seeks the disclosure of transcripts of the grand jury proceedings, as Defendant believes Special Agent Flint may have given false testimony before the grand jury. Grand jury proceedings are secret. Fed. R. Crim. P. 6(e)(2). "The Court may authorize disclosure . . . of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(ii). As discussed above, Defendant has not shown that a ground exists to dismiss the indictment. Consequently, there is no basis for producing the transcripts of the grand jury proceedings. Defendant's motion to produce transcripts of the grand jury proceedings is denied.

### III.     RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Reconsideration and Dismissal Based on Prosecutorial Misconduct (ECF No. 445)–to the extent it seeks to dismiss the complaint and the indictment–be **DENIED**.

### IV.     ORDER

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. To the extent that Defendant seeks reconsideration of this Court's findings at the preliminary examination and detention hearing, Defendant's Motion For Reconsideration and Dismissal Based on Prosecutorial Misconduct (ECF No. 445) is **DENIED**.

2. Defendant's Motion for Grand Jury Transcripts (ECF No. 447) is **DENIED**.

DATED: October 7, 2011

*s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 24, 2011**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 24, 2011,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.